UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| STEVE GREEN, | ) | |
| aka Steve O'Neal Green, | ) | |
| Institutional ID No. 1436873, | ) | |
| SID No. 4149406, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 5:10-CV-066-BG |
| NURSE RESPONDEK, | ) | ECF |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

**STATEMENT OF THE CASE**

Appearing *pro se* and *in forma pauperis*, Plaintiff Steve Green, an inmate incarcerated by the Texas Department of Criminal Justice (TDCJ), filed this action pursuant to 42 U.S.C. § 1983. Green complains that Defendants Parker (a prison mail supervisor) and Respondek (a prison nurse) violated his constitutional rights during his confinement at the John T. Montford Unit (Montford Unit). Specifically, Green complains that (1) Parker allowed prison mail staff to open Green's legal mail in violation of his First and Fourteenth Amendment rights and (2) Respondek used a "negative charting" system to violate Green's Fourteenth Amendment right to due process.

The United States District Court transferred the case to the United States Magistrate Judge for further proceedings. The undersigned thereafter reviewed authenticated records from the Montford Unit and conducted a hearing pursuant to *Spears v. McCotter*, 766 F.2d 179, 181-82 (5th Cir. 1985). The undersigned provided Green with an opportunity to consent to the jurisdiction

1

of the United States Magistrate Judge at the hearing, but Green did not do so. Pursuant to the order of assignment, the undersigned now files this Report and Recommendation.

## STANDARD OF REVIEW

This action is subject to preliminary screening under 28 U.S.C. § 1915(e)(2), which provides for dismissal of a complaint filed *in forma pauperis* if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2) (2010). A complaint is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). A complaint lacks an arguable basis in law if it is "based on an indisputably meritless legal theory." *Id.* at 327. A complaint lacks an arguable basis in fact if the "factual contentions are clearly baseless." *Id.* A court may base a finding of frivolousness based on a plaintiff's allegations, testimony obtained at a *Spears* hearing, and authenticated prison records. *See Banuelos v. MacFarland*, 41 F.3d 232, 234 (5th Cir. 1995); *Wilson v. Barrientos*, 926 F.2d 480, 483-84 (5th Cir. 1991).

## DISCUSSION

### I. Legal Mail Claim

A prison official's interference with legal mail may violate a prisoner's First Amendment right to free speech and Fourteenth Amendment right of access to the courts. *See Wolff v. McDonnell*, 418 U.S. 539, 575-76, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Brewer v. Wilkinson*, 3 F.3d 816, 820 (5th Cir. 1993). First Amendment concerns arise when legal mail is censored. *See Brewer*, 3 F.3d at 824-26. Fourteenth Amendment concerns arise when prison practices interfere

with an inmate's ability to prepare and transmit a necessary legal document. *See id.* at 820-21, 824-26.

"[I]n determining the constitutional validity of prison practices that impinge upon a prisoner's rights with respect to mail, the appropriate inquiry is whether the practice is reasonably related to a legitimate penological interest." *Brewer,* 3 F.3d at 824. Prison security and detection of contraband in incoming mail are legitimate penological objectives. *See Turner v. Safley*, 482 U.S. 78, 91-93, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1978) (policy limiting correspondence between inmates in different institutions does not violate First Amendment rights because it "logically advances the goals of institutional security and safety"); *see also Brewer*, 3 F.3d at 825.

To prevail on a First Amendment claim regarding interference with prisoner mail, a plaintiff must show that (1) prison practices have censored the plaintiff's mail or interfered with the plaintiff's ability to prepare or transmit a necessary legal document and (2) the complained-of practices are not reasonably related to a legitimate penological interest. *See Brewer*, 3 F.3d at 824-26. To prevail on a Fourteenth Amendment claim regarding interference with prisoner mail, a plaintiff must make both showings required for a First Amendment claim and also show that his position as a litigant was prejudiced. *See Walker v. Navarro County Jail*, 4 F.3d 410, 413 (5th Cir. 1993); *see also Brewer*, 3 F.3d at 826.

Applying these standards in *Brewer v. Wilkinson*, the Court of Appeals for the Fifth Circuit found First and Fourteenth Amendment violations where prison officials "arbitrarily opened an item of [a prisoner's] outgoing legal mail and removed [a legal document] therein, thus preventing this document from ever arriving in the district court." *Brewer*, 3 F.3d at 825. Regarding the First Amendment claim, the court noted that "for decades this court has acknowledged a prisoner's right

3

to be free from completely arbitrary censorship of his outgoing mail." *Id.* at 826. Regarding the Fourteenth Amendment claim, the court noted, "[T]hat a prisoner's right of access to the courts includes his ability to prepare and transmit a necessary legal document to a court has been clearly established for decades." *Id.* The court in *Brewer* also found that preventing a necessary legal document from arriving in court satisfied the plaintiff's required showing of legal prejudice. *Id.*

In contrast to its holding regarding *outgoing* legal mail, the court in *Brewer* held that the prison's violation of its own policy – which required that a prisoner be present when his *incoming* legal mail was opened and inspected for contraband – was not a violation of the plaintiff's constitutional rights. *Id.* at 825. The court emphasized that "[t]he implications of outgoing correspondence for prison security are of a categorically lesser magnitude than the implications of incoming materials." *Id.* (quoting *Thornburgh v. Abbott*, 490 U.S. 401, 413, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989)).

In the instant case, Green complains that his incoming legal mail was opened on at least five occasions. Green testified that on four of these occasions, the mail contained court orders related to civil cases he is pursuing. On one of these occasions, the opened mail was from the District Attorney's office, concerned Green's criminal case, and according to Green was clearly labeled as such. Green also complains that he does not receive his mail until three or four weeks after the postmark date. Green testified that these deficiencies in mail room procedure did not cause him to miss a deadline in any legal case but that he did feel "added pressure" to meet deadlines because of the delays.

The facts alleged by Green do not rise to the level of a First or Fourteenth Amendment violation for several reasons. First, Green has not met the threshold requirement of showing that

4

prison practices have censored his mail or prevented him from preparing or transmitting a necessary legal document. Although Green's mail has been opened and its receipt delayed, Green does not allege that the contents of his mail have been manipulated or that he has been entirely deprived of its receipt. Accordingly, Green's mail has not been censored. *See Busby v. Dretke*, 359 F.3d 708, 722 (5th Cir. 2004) (defining mail censorship in the prison context as redacting or rejecting prisoner mail).

Green also does not allege that prison practices have interfered with his ability to prepare or transmit a legal document, and he has not alleged that his position as a litigant has been prejudiced due to prison mail practices. As stated above, he testified that prison practices have not prevented him from meeting any deadline in a legal case. *See Richardson v. McDonnell*, 841 F.2d 120, 122 (5th Cir. 1988) (even though prisoner had to re-prepare a legal document that a prison officer had prevented from arriving at court, prisoner's position as a litigant not prejudiced because prisoner was able to "timely file" the document).

Finally, the prison's practice of opening mail serves the legitimate penological objective of searching for contraband. "The possibility that contraband will be enclosed in letters, even those from apparent attorneys, surely warrants prison officials' opening the letters." *Wolff*, 418 U.S. at 578.

For the foregoing reasons, Green's claims regarding legal mail do not state constitutional violations and should be dismissed as frivolous under 28 U.S.C. § 1915(e)(2).

## II. Medical Charting Claim

"[T]he range of interests protected by procedural due process is not infinite." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 571, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). When analyzing

5

a claimed due process violation, a court must first examine the asserted liberty interest "to determine what process (if any) is due." *Dist. Att'y's Office for the Third Judicial Dist. v. Osborne*, --- U.S. ----, 129 S.Ct. 2308, 2319, 174 L.Ed.2d 38 (2009). A prisoner's liberty interest is "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Pichardo v. Kinker*, 73 F.3d 612, 613 (5th Cir. 1996) (quoting *Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)).

Applying this standard, the Court of Appeals for the Fifth Circuit has held that "absent extraordinary circumstances, administrative segregation as such, being an incident to the ordinary life as a prisoner, will never be a ground for a constitutional claim[.]" *Id.* at 612. For example, in *Martin v. Scott*, 156 F.3d 578 (5th Cir. 1998), a prisoner complained that his placement in administrative segregation "limited his recreation and visitation time, restricted his ability to possess certain personal property, required him to wear a jumpsuit, denied him the right to buy certain commissary items, denied him dessert with his meals, required him to be handcuffed every time he left his cell, and [required him to eat] Vita-Pro." *Id.* at 579 n.1. The court held that the prisoner had failed to allege a protected liberty interest because the conditions he described were "far from extraordinary[.]" *Id.* at 580 (internal quotations omitted). In another case, the court held that "30 day commissary and cell restrictions as punishment are in fact merely changes in the conditions of . . . confinement and do not implicate due process concerns." *Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997). Similarly, the court has held that an inmate "does not have a protectable liberty or

6

property interest in his custodial classification." *Wilson v. Burney*, 976 F.2d 957, 958 (5th Cir. 1992).

In the instant case, Green complains that Defendant Respondek has used "negative charting" to punish him outside of the usual administrative disciplinary system. According to Green's testimony, negative charting is a practice in which negative reports by medical staff result in punishment. As an example, Green testified, "If you raise your voice, they give you negative charting . . . ; they take your property and restrict custody." Green did not allege any other forms of punishment under this system. However, he specifically complains that Defendant Respondek wrote several negative reports about him, which resulted in punishment without any notice or hearing. He claims that when he asked for copies of the reports that resulted in his punishment, Defendant Respondek referred him to the medical records department. He testified that the medical records department requires 10 cents per copy for him to access his medical records, which he cannot afford because he is indigent.

While the court sympathizes with Green's inability to access his medical records, his complaint about the negative charting system does not rise to the level of a constitutional violation. The only potential deprivations Green cites are custody restrictions and confiscation of property. These deprivations are incident to ordinary life as a prisoner and therefore do constitute liberty interests protected by the Fourteenth Amendment's due process clause. *See Martin*, 156 F.3d at 579-80. Furthermore, improper confiscation of property by prison officials does not constitute a claim under 42 U.S.C. § 1983 because the state law tort of conversion provides an adequate post-deprivation remedy. *See Murphy v. Collins*, 26 F.3d 541, 543-44 (5th Cir. 1994).

Because Green has not alleged a liberty interest protected by the Fourteenth Amendment,

7

the court does not reach the question of whether Green should have access to his medical records to use in connection with the negative charting system. For the same reason, Green's claims regarding the negative charting system do not describe constitutional violations and should be dismissed as frivolous under 28 U.S.C. § 1915(e)(2).

## CONCLUSION

For the foregoing reasons, the undersigned recommends that the District Court dismiss this complaint and all claims therein pursuant to 28 U.S.C. § 1915(e)(2). The undersigned further recommends that all pending motions be denied as moot.

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2010); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: January 7, 2011.

NANCY M. KOENIG
United States Magistrate Judge